IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Ashante Ishmael Wright, #326386 ) | C/A No. 5:13-282-TLW-KDW |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | REPORT AND RECOMMENDATION |
| ) | |
| McFadden, Warden, ) | |
| ) | |
| Respondent. ) | |
| ) | |

Petitioner Ashante Ishmael Wright ("Petitioner") is a state prisoner who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 35, 36. On August 6, 2014, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the Summary Judgment Motion, dismissal procedures, and the possible consequences if he failed to respond adequately to Respondent's Motion. ECF No. 37. On September 8, 2014, Petitioner filed a Response in Opposition to Respondent's Motion for Summary Judgment. ECF No. 46. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 46, be granted.

I.     Background

Petitioner is currently incarcerated in the Lieber Correctional Institution ("LCI") of the South Carolina Department of Corrections ("SCDC"). ECF No. 1 at 1. In 2006, Petitioner was

indicted at the October term of the Charleston County Grand Jury for murder (2006-GS-10-10690). App. 11; 503.[1] Jason King and Michelle Suggs represented Petitioner in a jury trial that convened from January 28-30, 2008, before the Honorable Deadre L. Jefferson. *Id.* Bruce Durant and Rutledge Durant represented the State. *Id.* After the trial, the jury found Petitioner guilty of murder. App. 385. Judge Jefferson sentenced Petitioner to fifty years imprisonment for the murder conviction. App. 401.

Deputy Chief Appellate Defender Robert M. Dudek represented Petitioner on direct appeal and filed an *Anders*[2] Brief on his behalf. ECF No. 36-5. In his *Anders* brief, Petitioner argued:

> Whether the court erred by refusing to declare a mistrial where the solicitor asked defense witness Shavella Davis to admit that she was arrested on June 1, 2007 for being in possession of a stolen automobile since this was improper impeachment, and any probative value this evidence had was outweighed by its unduly prejudicial effect under Rule 403, SCRE and it was highly prejudicial to appellant since Davis was his alibi witness?

*Id.* at 4. Additionally, Petitioner filed a pro se brief and argued two issues, recited verbatim:

> (A) Did the trial court err by not declaring a mistrial based on unfair prejudice of the highly prejudicial opinion testimony of a state's witness who had not be qualified as a expert by the trial court, and the prejudice could not be cured by way of a curative instruction?
>
> (B) Did the trial court err in handing down a sentence that is contrary to legislative intent?

---

[1] Citations to "App." refer to the Appendix for Writ of Certiorari as to Petitioner's claim for collateral relief in the state courts of South Carolina. That appendix is available at ECF Nos. 36-1 through 36-4 in this habeas matter.

[2] *See Anders v. California*, 386 U.S. 738 (1967).

ECF No. 36-6 at 2, 6. After reviewing both briefs, the South Carolina Court of Appeals dismissed Petitioner's direct appeal in an unpublished opinion on February 11, 2010. *See* ECF No. 36-7. On March 1, 2010, the Court of Appeals issued a Remittitur. ECF No. 36-8.

II.     Procedural History

Petitioner filed an application for Post-Conviction Relief ("PCR") on October 5, 2010 (2010-CP-10-8286), alleging "Ineffective Assistance of Counsel." App. 404-11. Specifically, Petitioner asserted the following allegations, recited verbatim, regarding his claims:

> (A)   failure to timely investigate.
> (B)   failure to obtain independent photographs of the crime scene at night.
> (C)   failed to check with SCE&G about status of street lighting at alleged crime scene during the time the crime was allegedly committed.
> (D)   failure to investigate the status of church/school exterior lighting near crime scene on night of crime.
> (E)   failure to obtain photographs from different locations of the alleged witnesses.
> (F)   failure to investigate and obtain medical testimony about the prevalence of lip pigment disorder of Applicant which one witness used to identify Applicant as the alleged murderer.
> (G)   failure to object to Solicitor's opening statement:
>       "This may be the most important week of Ashante Wright's life. He's plead not guilty. So I am asking you to do your duty as Solicitors." (Tr. p. 62, lines 2-4).
>
> Furthermore, Defense Counsel did not object to the Closing argument of the Solicitor as follows:
> "You would tell them, it wasn't me, I can prove it wasn't me because I was with my friends Sally and John and if you don't believe me Sally's name is Sally Brown and John's Name is John Green and they live at such and such address and we could get in your car right now and I'll take you over there and you can talk to them and they will verify that I was with them. That's what any rational person would do if it was true.
> Like I said, these were not strangers to him. And the reason he couldn't do that because it wasn't true. And he knew that somebody had to have talked to those

3

> witnesses before the Police did. That's something. That's where Shavella Davis enters…" (Tr.p.335, L. 13-25).
>
> "Would you think it was important if your friend, relative, or even somebody you were just acquainted with and had been accused of murder and you knew they couldn't have committed the murder because they were with you? You don't think it would be important to go to the Police under the circumstances?" (Tr.p. 356, L. 13-18).
>
> The Petitioner was denied effective assistance of Trial Counsel when Trial Counsel failed to object to these highly prejudicial statement that violated the "Golden Rule" and denied the Petitioner his right to a fair Trial.
>
> The argument of the Prosecution suggests to the jurors that they put themselves in the shoes of the Solicitor and in the shoes of the Petitioner.

App. 411. The State filed a Return to Petitioner's Application on February 3, 2011. ECF No. 411-15. Prior to the PCR hearing, on November 17, 2011, Demal Mattson, Esquire, filed a "Brief in Support of PCR" on Petitioner's behalf. App. 416-424. Thereafter, a motions hearing convened on January 11, 2012, before the Honorable R. Markley Dennis, Jr. App. 528-74. Petitioner was present and represented by Demal Mattson, and Matthew Friedman appeared on behalf of the State. *See id.* In an Order filed February 22, 2012, the PCR court denied Petitioner's PCR Application in full, making the following findings of fact and conclusions of law:

> This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the hearing. This Court has further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon his or her credibility. This Court has weighed the testimony accordingly. Set forth below are the relevant findings of fact and conclusions of law as required by S.C. Code Ann. § 17-27-80 (2003).
>
> Trial counsel testified that he met with Applicant six times prior to trial. He testified that Applicant told him he was with two women at the time of the shooting. He testified that he contacted both women, and one testified for the State while the other one testified for Applicant. Counsel asserted that one of these women, Johnetta Campbell, denied Applicant's alibi. Counsel testified that he argued that Ms. Campbell denied Applicant's story because she was on probation and they were all smoking marijuana at the time.

4

Counsel testified that he did not have anyone take photographs of the crime scene. He testified that he visited the crime scene during the day on October 18, 2007. He asserted that most of the photographs taken the night of the incident were of the victim's body. He testified that the solicitor's investigator, Matt Casey, took photographs of the scene at night, and counsel was able to cross-examine Mr. Casey and even admitted one of Mr. Casey's photographs that the State did not plan to introduce. Counsel testified that he has no reason to believe that Mr. Casey's photographs were modified. He testified that the two witnesses who observed the shooting knew Applicant prior to this incident and had seen Applicant on their street earlier in the evening as they were coming home from the grocery store. He testified that the two witnesses saw Applicant running with a gun right in front of their house immediately after the shooting. Counsel testified that he objected to a Golden Rule comment during the State's closing, but the objection was overruled after a bench conference. He testified that during his opening statement he inadvertently asked the jury to do its job as "solicitors," but he meant to say "jurors." He asserted that he did not think his statement confused the jury.

Counsel testified that he had plenty of time to prepare for trial because the first trial resulted in a hung jury and a mistrial so the case was tried twice. He testified that the State made a plea offer of twenty-five (25) years for voluntary manslaughter prior to the first trial and an offer of twenty (20) years for voluntary manslaughter after the mistrial. Counsel asserted that he advised Applicant to accept the offer for twenty (20) years because only one juror had held out during the first trial. He testified that he communicated each plea offer to Applicant, and it was Applicant's decision to reject both offers.

The Applicant testified that he saw counsel two times. He testified that during the first meeting counsel brought him the State's plea offer for twenty-five (25) years, and Applicant decided to reject it because he wanted to go to trial. He testified that during a second meeting, counsel brought him an offer for eighteen (18) years and said it was not looking good, but Applicant told counsel that he was not taking the offer. Applicant testified that counsel was ineffective for asking the jury during the opening argument to do its job as solicitors. He asserted that even though counsel objected when the solicitor asked the jury to put themselves in Applicant's shoes, counsel should have done more to protect against that argument. Applicant testified that counsel did a sloppy investigation and he should have sent an investigator to the scene to check the lighting conditions.

## Ineffective Assistance of Counsel

The Applicant alleges that he received ineffective assistance of counsel. In a post-conviction relief action, the applicant has the burden of proving the allegations in the application. Rule 71.1(e), SCRCP; <u>Butler v. State</u>, 286 S.C. 441, 334 S.E.2d

813 (1985). Where ineffective assistance of counsel is alleged as a ground for relief, the applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668 (1984); Butler, 334 S.E.2d 813.

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. The courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Strickland, 466 U.S. 668. The applicant must overcome this presumption in order to receive relief. Cherry, 386 S.E.2d 624.

Courts use a two-pronged test to evaluate allegations of ineffective assistance of counsel. First, the applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under professional norms." Id. at 625 (citing Strickland, 466 U.S. 668). Second, counsel's deficient performance must have prejudiced the applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 625. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. Johnson v. State, 325 S.C. 182, 480 S.E.2d 733 (1997).

This Court finds that the Applicant's testimony is not credible while also finding that trial counsel's testimony is credible. This Court finds that counsel is a trial practitioner who has extensive experience in the trial of serious offenses. Counsel conferred with the Applicant on several occasions. During conferences with the Applicant, counsel discussed the pending charges, the elements of the charges and what the State was required to prove, Applicant's constitutional rights, and possible defenses or lack thereof.

Regarding Applicant's claims of ineffective assistance of counsel, this Court finds Applicant has failed to meet his burden of proof. This Court finds that counsel demonstrated the normal degree of skill, knowledge, professional judgment, and representation that are expected of an attorney who practices criminal law in South Carolina. State v. Pendergrass, 270 S.C. 1, 239 S.E.2d 750 (1977); Strickland, 466 U.S. at 668; Butler, 286 S.C. 441, 334 S.E.2d 813. This Court further finds counsel adequately conferred with Applicant, conducted a proper investigation, and was thoroughly competent in his representation. This Court finds that counsel's representation did not fall below an objective standard of reasonableness.

This Court finds that counsel conducted a thorough investigation. He went to the scene and raised the fact that a police notation indicated that there was bad

lighting at the scene. He was able to cross-examine the State's investigator about his photographs and the lighting conditions, and he admitted one photograph that was favorable to Applicant. Counsel also had no reason to believe that the State's investigator had modified the photographs. Counsel was able to cross-examine the two eyewitnesses and bring out any relevant inconsistencies in their testimony.

This Court finds that counsel properly communicated both plea offers to Applicant, and it was Applicant's decision to reject both offers. Counsel advised Applicant to accept the second plea offer based on the fact that only one juror had held out during the first trial. Ultimately, Applicant elected to proceed to trial. This Court finds that counsel was adequately prepared for trial and met with Applicant a sufficient number of times prior to trial.

This Court finds that Applicant was not prejudiced by counsel's comment during opening argument that the jury should do its job as "solicitors." Clearly, counsel meant to say jurors rather than solicitors, and there is no indication that the jurors were confused or influenced by his mistake.

Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test, specifically that counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that counsel committed either errors or omissions in his representation of the Applicant. The Applicant failed to show that counsel's performance was deficient. This Court also finds the Applicant has failed to prove the second prong of Strickland, specifically that he was prejudiced by counsel's performance. Applicant's complaints concerning counsel's performance are without merit and are denied and dismissed.

## All Other Allegations

As to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this Order, this Court finds the Applicant failed to present any evidence regarding such allegations. Accordingly, this Court finds the Applicant waived such allegations and failed to meet his burden of proof regarding them. Therefore, they are hereby denied and dismissed.

## CONCLUSION

Based on all the foregoing, this Court finds and concludes the Applicant has not established any constitutional violations or deprivations before or during his trial or sentencing proceedings. Counsel was not deficient in any manner, nor was the Applicant prejudiced by counsel's representation. Therefore, this PCR application must be denied and dismissed with prejudice.

> This Court advises the Applicant that he must file a notice of intent to appeal within thirty (30) days from the receipt of written notice of entry of this Order to secure appropriate appellate review. His attention is also directed to Rules 203, 206, and 243 of the South Carolina Appellate Court Rules for the appropriate procedures to follow after notice of intent to appeal has been timely served and filed.

App. 576-82. Appellate Defender David Alexander filed a *Johnson*[3] Petition for Writ of Certiorari on Petitioner's behalf, dated December 12, 2012. ECF No. 36-9. Therein, he raised: "Whether petitioner's Sixth Amendment rights were violated because trial counsel failed to investigate and present an adequate defense?" *Id.* at 3. Petitioner did not file a pro se brief or a response to the *Johnson* Petition. The South Carolina Supreme Court issued an Order denying the Petition for Certiorari on May 16, 2013, and issued the Remittitur on June 4, 2013. ECF Nos. 36-10, 36-11. This federal habeas Petition followed and was filed on February 3, 2014. ECF No. 1.

   III.   Discussion

      A. Federal Habeas Issues

Petitioner raises the following issues in his Federal Petition for a Writ of Habeas Corpus, quoted verbatim:

> GROUND ONE: Ineffective Assistance of Counsel
> Supporting Facts: Lawyer failed to investigate, in light of ruling Wiggins v. Smith
> ECF No. 1 at 5.
>
> GROUND TWO: Violation of the 5th Amendment right
> Supporting Facts: None Listed.
> *Id.* at 6
>
> GROUND THREE: Violation of 6th, and 14th Amendment
> Supporting Facts: None listed.
> *Id.* at 8.

---

[3] *See Johnson v. South Carolina*, 364 S.E.2d 201 (S.C. 1988).

8

B.  Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the

9

court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

  C. Habeas Corpus Statute of Limitations

Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claim is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). The AEDPA provides that "[a] 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). Further, the AEDPA provides that the limitation period shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.A. § 2244(d)(1)(A)-(D). The statute further provides that "[t]he time during which a properly filed application for State post-conviction or collateral relief with respect to the pertinent judgment or claim that is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

 IV. Discussion

  A. Petitioner's Application Is Time-Barred

10

Respondent argues that Petitioner's habeas Petition should be dismissed because all of Petitioner's claims are barred by the statute of limitations. ECF No. 36 at 12-13. Petitioner does not address the statute of limitations argument when responding to the Motion for Summary Judgment. ECF No. 46. However, on the same day he filed his Response, Petitioner also filed a Motion for Equitable Tolling. ECF No. 47. In this Motion, Petitioner concedes he did not timely file his Habeas Petition stating, "Petitioner was late in his filings based on the riots (etc) but has been diligent in pursuit of his Appeal rights. (see attached affidavit)" *Id.* at 1.[4]

The AEDPA provides that "[a] 1 year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court." 28 U.S.C. § 2244(d)(1). The time limit begins to run at the "conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The United States Supreme Court recently interpreted the two prongs of 28 U.S.C. § 2244(d)(1)(A) as follows:

> The text of § 2244(d)(1)(A), which marks finality as of "the conclusion of direct review or the expiration of the time for seeking such review," consists of two prongs. Each prong—the "conclusion of direct review" and the "expiration of the time for seeking such review"—relates to a distinct category of petitioners. For petitioners who pursue direct review all the way to this Court, the judgment becomes final at the "conclusion of direct review"—when this Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the "expiration of the time for seeking such review"—when the time for pursuing direct review in this Court, or in state court, expires. We thus agree with the Court of Appeals that because [petitioner] did not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired.

*Gonzalez v. Thaler*, 132 S. Ct. 641, 653-54 (2012) (clarifying the Court's prior cases concerning 28 U.S.C. § 2244(d)(1)(A)). In 2009, the South Carolina Supreme Court held it would no longer

---

[4] The undersigned will consider Petitioner's arguments in his Motion for Equitable Tolling in the following section.

11

consider petitions for writ of certiorari after the South Carolina Court of Appeals reviewed and dismissed an *Anders* appeal. *See State v. Lyles*, 673 S.E.2d 811, 813 (S.C. 2009) ("This Court will no longer entertain petitions for writs of certiorari where the Court of Appeals has dismissed an appeal after conducting an *Anders* review."). Therefore, when the Court of Appeals rather than the South Carolina Supreme Court reviews and issues an opinion concerning an *Anders*' appeal, the Court of Appeals is the highest court "in which a decision could be had." Accordingly, an appellant could directly seek the United States Supreme Court's review of the *Anders*' opinion within 90 days of the South Carolina Court of Appeals' decision. *See e.g.*, *Reddock v. Ozmit*, No. 3:09-204-RBH, 2010 WL 568870, at *5 (D.S.C. Feb. 11, 2010) ("Given this new rule, [in the *Lyles*' holding] it now appears that it would be possible to seek certiorari review from the United States Supreme Court directly from the state court of appeals' *Anders* dismissal because now under state procedure the South Carolina Court of Appeals is 'the highest court of a State in which a decision could be had' regarding cases that were dismissed pursuant to *Anders* review."). *Glover v. Warden McCormick Corr. Inst.*, No. 3:10-2277-DCN, 2011 WL 2731325, at *5 n.4 (D.S.C. May 31, 2011) *report and recommendation adopted,* No. 3:10-2277 DCN, 2011 WL 2731255 (D.S.C. July 13, 2011) ("[I]n cases resolved by the South Carolina Court of Appeals on *Anders* review, a petitioner would be entitled to a period of 90 days to seek review by the United States Supreme Court from the decision by the South Carolina Court of Appeals.").

Here, it is undisputed that Petitioner did not seek review by the United States Supreme Court. Accordingly, the AEDPA's one-year statute of limitations began running when his state convictions became final 90 days after the South Carolina Court of Appeals dismissed

Petitioner's *Anders* appeal. *See Gonzalez*, 132 S. Ct. at 654 (finding a Petitioner's conviction and sentence become "final" when his "time for seeking review with the State's highest court expire[s].").

Review of the record indicates Petitioner's federal habeas Petition was not timely filed. As previously summarized, Petitioner timely appealed his convictions and sentences and his appeal was perfected with the filing of a Final *Anders* Brief of Appellant, ECF No. 36-5, and a pro se brief, ECF No. 36-6, in the South Carolina Court of Appeals. The court dismissed his *Anders*' appeal on February 11, 2010. ECF No. 26-5. Here, Petitioner did not seek review of the South Carolina Court of Appeal's decision to dismiss his *Anders*' appeal. ECF No. 26-5. Therefore, pursuant to *Gonzalez*, the statute of limitations began running on May 12, 2010, 90 days later.

Petitioner subsequently filed his PCR application on October 5, 2010, (2010-CP-10-8286). Petitioner's PCR proceedings tolled the one-year limitations period. 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). At this point, 146 days had elapsed since Petitioner's conviction became final. The South Carolina Supreme Court issued an Order denying the Petition for Certiorari on May 16, 2013, and issued the Remittitur on June 4, 2013. ECF No. The statute of limitations remained tolled until June 4, 2013, when the Court of Appeals remitted the matter to the lower court. *See* ECF No. 26-11; *Frazier v. Stevens*, No. 4:09-302-JFA-TER, 2010 WL 921613, at * 3 n.6 (D.S.C. Mar. 10, 2010), *as amended* (Mar. 12, 2010) (tolling the period of limitations from the date petitioner filed his first PCR until the date the

South Carolina Supreme Court issued the Remittitur); *Gambrell v. Bazzle*, No. 9:07-cv-00172-RBH-GCK, 2008 WL 269505, at *5 (D.S.C. Jan. 29, 2008) ("When the Supreme Court issued the Remittitur following its Order denying the petition for a writ of certiorari on December 19, 2003, Petitioner's first PCR action became final.").

However, Petitioner did not file this habeas action until January 22, 2014. ECF No. 1-1 at 1; *see Houston v. Lack,* 487 U.S. 266, 270–71 (1988) (stating that a prisoner's pleading is filed at the moment of delivery to prison authorities for forwarding to the district court).  By the time Petitioner filed his habeas action, 231 days had passed since the South Carolina Supreme Court's Remittitur. Therefore, the un-tolled time totaled 377 days.  Accordingly, the January 22, 2014 filing date was 12 days after Petitioner's statute of limitations had run. Therefore, Petitioner's habeas Petition is untimely under 28 U.S.C. § 2244(d) and must be dismissed.

B.  The Statute of Limitations Should Not Be Equitably Tolled

The AEDPA's statute of limitations is subject to equitable tolling, which could, in effect, extend the final date for filing a habeas petition.  *Harris v. Hutchinson*, 209 F.3d 325 (4th Cir. 2000). The Fourth Circuit has underscored the very limited circumstances in which equitable tolling of the AEDPA's limitations period will be permitted, holding that a habeas petitioner "is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time."  *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc).  Thus, rarely will circumstances warrant equitable tolling of the AEDPA limitations period:

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent

14

> responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Harris*, 209 F.3d at 330. The respondent bears the burden of asserting the AEDPA's statute of limitations, *Hill v. Braxton*, 277 F.3d 701, 705 (4th Cir. 2002); the petitioner then bears the burden of establishing that his petition is timely or that he is entitled to the benefit of the equitable-tolling doctrine, *Rouse*, 339 F.3d at 246.

In 2010, the United States Supreme Court considered the issue and also held that § 2244 "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010); *cf. Pace v. DiGuglielmo*, 544 U.S. 408, 418 n.8 (2005) (noting Court assumed without deciding that AEDPA's statute of limitations could be equitably tolled for purposes of that decision because respondent assumed it did). The *Holland* Court reiterated its prior holding in *Pace* that the statute would be equitably tolled "only if [the petitioner] shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 130 S. Ct. at 2562 (quoting *Pace*, 544 U.S. at 418)).

In what Petitioner captioned as a "Motion for Equitable Tolling," Petitioner argues that his legal materials were seized for 116 days "due to well publicized riots in Ashley unit [at LCI] on 1-2012, 6-2012 (other times) thus Petitioner was late in his filings based on the riots (etc) but has been diligent in pursuit of his appeal rights." ECF No. 47 at 1. In an affidavit attached to his Motion, Petitioner maintains there have been full-scale riots in the Ashley unit, and the "red team" seized his legal box for a total of 116 days. ECF No. 47-1 at 1. Further, Petitioner avers that he was unable to go to the law library during the riot lockdowns. *Id.* at 2. Additionally,

15

Petitioner contends that from November 4, 2013 until January 19, 2014, his legal materials had been seized by the Respondent. *Id.*

Courts have held that limited access to a prison's law library and lockdowns do not constitute extraordinary circumstances for purposes of equitable tolling. *Garvin v. Eagleton*, No. 8:12-01165, 2013 WL 3821482 (D.S.C. July 23, 2013) *appeal dismissed*, 544 F. App'x 236 (4th Cir. 2013) ("Petitioner's allegations regarding lack of resources in the law library do not constitute the type of extraordinary circumstances that justify equitable tolling because alleged inadequacies of prison law libraries do not toll the statute of limitations."); *Sullivan v. Ozmint*, No. 8:08-1088-GRA-BHH, 2008 WL 1994835 (D.S.C. Apr. 14, 2008) *report and recommendation adopted*, No. 8:08-CV-1088-GRA-BHH, 2008 WL 2227237 (D.S.C. May 27, 2008) ("Unpredictable lockdowns or library closures do not constitute extraordinary circumstances warranting equitable tolling in this case. For these reasons, this court finds that the lockdowns and limited library access do not warrant equitable tolling in this case."); *United States v. Van Poyck,* 980 F. Supp. 1108, 1111 (C.D. Cal. 1997) (holding an inability to secure copies of transcripts from court reporters and lockdowns at prison lasting several days and allegedly eliminating access to law library were not extraordinary circumstances and did not equitably toll one-year statute of limitations). The undersigned finds that Petitioner has failed to present an extraordinary circumstance that was beyond his control that prevented him from filing a timely habeas petition. Therefore, Petitioner has failed to satisfy his burden of demonstrating entitlement to equitable tolling. Accordingly, equitable tolling of the statute of limitations is not

merited. Based upon the foregoing, the Petition was not timely filed, and it is barred by Section 2244(d)(1).[5]

V.  Conclusion and Recommendation

Wherefore, based upon the foregoing, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 35, be GRANTED and the Petition be DENIED. If the court accepts this recommendation, Petitioner's pending Motion to Amend his Habeas Petition, ECF No. 45, and his Motion for Equitable Tolling, ECF No. 47,[6] will be moot.

IT IS SO RECOMMENDED.

September 30, 2014  
Florence, South Carolina

Kaymani D. West  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

---

[5] Because the court finds that the statute of limitations bars Petitioner's § 2254 Petition, it is precluded from addressing the merits of his claims. *See Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995) (finding that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits).

[6] The undersigned considered Petitioner's arguments in his Motion for Equitable Tolling in the previous section. However, the undersigned found Petitioner's arguments were meritless.